Our first order of business today is actually a motion by Judge Rados. I'll turn the microphone over to him. Thank you, Judge Moore. I have the pleasure to move for admission to this court, Timothy Rawson. Tim, can you stand? There's an old adage by an old, wise person that says that time flies for law clerks when they work very hard and produce great work. And I made that up. There was no old saying. But I think it's true. I think it's true that time flies when you're fully engaged and your production is excellent. And that's been the result of your clerkship with me. Your presence and your participation in my chambers this past year and a half has been exceptional. And it's been to the benefit and to attribute both to my chambers and to the court as a whole and to the legal profession. So I tell my colleagues that before us stands a person who is an excellent legal practitioner and who I'm sure will be a bright, leading star in the legal profession. And for that reason, I move for his admission. So, colleagues, I move for the admission of Timothy Rawson. He's a member of the bar and is in good standing with the highest court of both California and Texas. I have knowledge of his credentials, and I'm satisfied that he possesses the necessary qualifications. I fully favor the motion. Tim certainly has served as an exceptional clerk. I agree. We've had the opportunity to. I've heard firsthand about your work product from my own clerks. And so I'm happy to likewise join in with Judge Stoll and approve your admission to our bar. So I look forward to seeing you on that side of the podium again sometime. Please turn towards our clerk of court to be sworn in. Your Honor, do you solemnly swear or affirm that you will report yourself as an attorney to the counsel of this court, without reference to the court of the law, and that you will not be prosecuted under any circumstances? I do. Thank you. Absolutely. Okay. Our first case for today, 2018-2331, Ingray Gates. Mr. Lucas, please proceed. Thank you, Your Honors. James Lucas on behalf of Appellants Gates and Black. May it please the Court. We ask that the Court reverse the Board's decision finding Claims 1-9 of the 6-6 application unpatentable. And specifically, because all claims rise and fall based on Claim 1, we ask that the Board reverse the decision finding Claim 1 unpatentable as anticipated, based on the Tufane reference. The Board found that the Tufane reference expressly anticipated the Claim 1 of the 6-6-8 patent, and we believe that that is not correct, that in order for a reference to expressly anticipate the claim, it must disclose all the limitations of the claim arranged or combined in the same way as in the claim, as in Claim 1, the computer-readable media claim. And we've gone through, there's these two embodiments, and both embodiments do not disclose all the limitations as claimed. I can just briefly touch on them, because I think they kind of set the stage for the fact that what the Board did was an impermissible obviousness determination, instead of an anticipation finding, by combining references that didn't disclose all of the limitations, and even together don't disclose all the limitations. I want to talk quickly about the first embodiment, and I think obviously the Court's read about it. That embodiment failed to disclose a two-transmission device limitation, and that's, as the Court's aware, Claim 1 is a computer-readable media claim, but really what it does is it provides a mouse that when it has sensors and signals, and then when it is removed from a flat surface, it turns into a remote or a presentation device. And that happens automatically, I gather. It does happen automatically. What happens is it's not just the mode changing, it's also the fact that you now need to use a new transmission device. So in the Tufane reference, that type of switching happens, but you have to unplug from the computer first, correct? Well, actually, no. In the first embodiment, the mode changes. In the first Tufane embodiment, the mode does change if you pick up the mouse or the device. But the problem is it's very clear in that embodiment that it's only wired or wireless. So what happens is by doing that, you're not changing the transmission device. There's no second transmission device. And that's conceded that it's always consistently one transmission device. So it doesn't go from RF to IR, for example. It can't happen in that Tufane embodiment. So therefore, it doesn't disclose the two-transmission device limitation. Similarly, it doesn't disclose the wear-in clause because, yes, you're right in that embodiment.  But that change is not configured to switch the transmission devices. It can't. Can I kind of make it a little simpler for you? Yeah. So am I understanding the patent to require when you lift the mouse off of the operational surface, when you lift it off of the surface, two things happen. Yes. Number one thing that happens is it changes from being a mouse to being a pointer or something. Pointer, presentation device, remote. Right, right, right. And the second thing that happens is it goes from being wired to wireless. It still may be plugged into the computer, but it's now going to transmit its data wirelessly. Is that right? So our central embodiment actually would just be a different type.  I didn't ask about the embodiment. I asked about the claims. Yes, it could do that. That would be a different transmission device, correct. But ours is like the preferred embodiment is like IR to RF. I didn't ask about the embodiment. I asked about the claims. Claims, yes, yes. It would change the transmission mechanism, correct, by doing that. That's correct. And one example would be from wired to wireless. Correct, yes. And so your argument about Typhane first embodiment is that when they lift it up, it does transition from being a mouse to being a pointer. So it meets the operational mode portion of Claim 1, but it doesn't meet the transition mode change that's required in Claim 1. That's correct, yes. Okay. So why don't you move on to the second embodiment. The second embodiment. Tell us what that's lacking. Okay, so the second embodiment doesn't have a sensor or signal. So there's no way it can detect whether it's been lifted up from the table. What it does have is it has a mechanism whereby if you plug it into the computer, it knows to go to mouse mode. And then if you unplug it, it goes to presentation mode. So you're saying the second embodiment doesn't have the operational mode switch when you lift it off the surface as required by Claim 1, correct? Correct. And it really doesn't have the transmission mode switch either because the transition mode in the claim is triggered by lifting it off the surface, and in Embodiment 2, it does transition, but only if you literally unplug it. I would agree with that. So anyway, so we get there, and so we have these two embodiments that don't disclose all the limitations. So you seem right. What else is there? Okay, well, I do think I'm right. So thank you. What is your response to the point made in the red brief about how they take the position that these are just two embodiments and that there's different possible features disclosed in the patent and that one of Ordinary's filming art looking at the patent would, I guess, somehow think that readily understand that there's a third embodiment that meets the limitations of the claims. I mean, I don't see that in the Board's opinion, but I see that in their brief. So I want to know what your response is. I appreciate the question, and I think that's a problem right there. I actually went through their brief, and I noticed there was the words ordinary skill and the art skilled artisan, and that has no place in an anticipation argument. Wait, wait. How a person of ordinary skill would read a reference does have place in anticipation. Right, but you can't combine embodiments to create the claimed invention. And so that's my first argument. Unless the patent were to say something like that. If the patent were to say, you know, obviously the patent were to indicate features of one could possibly be combined with features of the other or just describe these as features that could be included in any embodiment. Right. I agree with that. But here we don't have that is what you're saying? We don't have that. And then secondly, they cite the two cases for that proposition. And I think this is kind of interesting. They got Wrigley and Kenamental metal. You see that a bunch of times. It shows up at 15 of their brief and then again at 17 because Blue Calypso cites it. So I went to those two cases. I went to Wrigley. I think this is really important. Even if you take the position that the embodiments together disclose. And we disagree with that. Both those cases cite the net money case that Judge Moore should be familiar with. That's 545 F. 3rd, 1359. And it says, for example, in net money, this court held that an internet payment system was not anticipated by a prior art reference that disclosed all the components of the invention because the reference disclosed two separate payment protocols, each of which contained only a subset of the components claimed in the patent issue. And that's from Wrigley at 1361. So 683 F. 3rd, 1361 citing the net money case. So we don't even have the situation where all the limitations are disclosed. But the point is from that net money case, you just can't pick and choose. Immediately you're getting into an obviousness analysis by picking and choosing. In some cases you might not. But you're saying in this case you're definitely getting into an obviousness analysis. In this case. How would you have to modify that second embodiment in order to make it meet the claims? You see, I think that's another issue because I don't even know if you can combine them. We didn't make this argument because it was obviously not an obviousness issue. But because I think you'd have to add a sensor into the device because at that point it says it doesn't have it. And then some signaling mechanism such that I think you'd then have to, I guess, get rid of or maybe it could be complementary, the change when you plug in versus unplug, because that would probably conflict with moving it up and down potentially. But you definitely would have to add a sensor and a signal, as the patent application talks about, that would allow you to be able to determine whether the mouse was on the surface. Not just the sensor, but all the associated hardware that would then make the assessment. Correct. Software. Possibly software too, yes. Software, yeah. So I think to conclude, I mean, I think each embodiment, the other point of the net money case is that they say each embodiment might anticipate a claim directed to that embodiment, but it doesn't anticipate the claim as claimed, the actual specific claim language here. And I think that would be the point. That's even if all the limitations were disclosed. So we would ask that the court reverse this decision and find the claims patentable. Okay, Mr. Lucas, we'll save the remainder of your time for rebuttal. How do I pronounce your name? Dang. Dang. I wasn't sure how many of the words were part of the last name. That was the problem for me. So Ms. Dang, please proceed. May it please the Court. I'd like to begin with just pointing out the claim language. And just on Appendix 13, we can look at Claim 1. And appellants are arguing that there is a dependency between the mode switching and the transmission device switching. And if you look at Claim 1, the very last paragraph in Claim 1, the wearing clause, what it requires actually is that in the first mode, the handheld device is configured to use the first transmission device in response to an activation of some input elements, and the same for the second operational mode. And our position is that that doesn't require automatic switching between the transmission devices. Okay, where did that position appear in the board decision below? It feels like an awfully new position that you're taking for the first time on appeal. The board decision on Appendix 6, where it quotes the examiner's response to argument of the appeal brief, they emphasize the same mechanical means. They say that they're in the board. I've got the board decision. Where in the board decision would you like me to look? Appendix 6, kind of in the middle of the page, the paragraph starts, the handheld device 110 in the first embodiment and the second embodiment has the same mechanical means. Paragraph 6 of the opinion or Appendix 6? Sorry, Appendix 6. The paragraphs are in the middle of the page. So you're referring to that block, the last paragraph of the block indented paragraph? Yes. Okay. And there's a section of that quoted block where the board talks about the same mechanical means. And that mechanical means is the mechanics that do the automatic switching when you are setting it on the table and lifting it off the table. Now, the second embodiment doesn't actually have that, though. There's no disclosure of that in the second embodiment. In the second embodiment, the way it changes from wired to wireless or changes mode is by unplugging it. So that's not even true. I would say what the board found was that the embodiment, as Appellant calls it in Paragraph 36, includes that switching. But where in the reference does it actually say that? So if I may just talk about the passages in the reference that are at issue, maybe this will answer your question. So it's your position that in the second embodiment there is a sensor that determines whether the mouse is placed on a table or lifted up? Yes, that is our position. And that is what the examiner and the board did find. And if you look at TOFANE in the passages that are at issue here, Paragraphs 25 through 29 discuss in TOFANE ways to switch modes. Hang on just a second. Can you tell me where Paragraphs 25 through 28 is? I'm sorry. I just want to make sure I'm looking at the right spot. I can. Appendix 185. Okay. Thank you. So Appendix 185 and 186 are where most of the passages at issue are. And in Paragraphs 25 through 29, so that goes across the page, that's where TOFANE is discussing the ways to switch modes. Paragraph 25 talks about a switch, like a three-position hardware switch, I would call it. And then 28 talks about that switching where you put it on the table and lift it off the table. And 29 talks about a software switch. So this whole section is talking about how you switch between the mouse mode and the remote mode. And then Paragraphs 34 through 36, which starts at Appendix 186 and goes to 187. In that section, TOFANE is talking about how to communicate between the device and the host computer. So 34 talks about wired and wireless, and 35 also talks about the advantages of wireless. And then 36 is where it talks about a device that has a combined wired and wireless. But 36 says that you switch by unplugging it, right? Yes, it does. So what paragraph talks about switching the transmission mode by lifting it off the table? I agree with you that 28 talks about switching operational modes, but where does it talk about switching transmission modes by lifting it off the table? Yes, because I don't see that anywhere in this disclosure for any embodiment. Well, it's not in the claims. If you look at claim the last paragraph of Appendix 13, what's claimed is that in the first operational mode, the device is configured to use the first command transmission device in response to it. So that means when it's on the table, it's transmitting wirelessly, just to make it simple so we can both communicate. Wiredly. Wired. Wiredly. I'm making up words. Go ahead. Okay. So in the preceding paragraph, it says causing the handheld device to automatically transition, right? So they claim at line 10 on Appendix 13, automatic transition when you lift it off the table. I have the claim in front of me. What limitation are you talking about? Causing the handheld device to automatically transition. So on page, just so we can look at the right thing, Appendix 13, are there particular lines you would direct us to? Yeah. So lines 10 to 15 is the clause that claims the automatic switch between modes. And if you look at lines 16 through the end, there's nothing requiring an automatic switch between transmission devices. That's the where-in clause. And the where-in clause has a configured to and it claims that the transmission device. So just to make sure I understand, your argument is that you definitely have to transition from one operational mode to a second operational mode based on determining whether the handheld device is lifted or not. But now you're saying that this where-in clause, when it talks about switching from different transmission modes, it doesn't say exactly how that occurs. That's exactly right. And it definitely doesn't say automatically transition, which we know they know how to claim because in line 10. I think, for all I know, that could be a good argument. One of the concerns I have is that we do review these cases under the APA, just like any other decisions from the Board. And what you've just said and a lot of the things in your red brief find no basis at all in the Board's opinion. So what are we supposed to do as a reviewing court here? How is that fair notice to the appellant who was relying on the Board's decision and not this new ground that the government is presenting here on appeal? Well, Your Honor, I would point you to the appeal brief and the reply brief at the Board. And the first time we heard the words dependency or dependent was in the blue brief. The Board didn't pass on the issue of whether these things were dependent on each other. In the reply brief, they seemed to try to get at something close to that, but it didn't become clear until the blue brief that they were arguing that the transmission devices are dependent on this mechanical thing of laying it on the table and lifting it. I guess I have the same concern that Judge Stoll did. I mean, there's no meat to the Board's opinion. This is definitely a vegetarian opinion. And when you look at appendix page 6, the only meat in the entire opinion is this basically one paragraph or two paragraphs quoted from the examiner. And in it, it talks about a second command transmission device while in second operational mode, and in parentheses, tabletop mode, mouse mode. I mean, it sounds to me like the examiner was focused on just having two different transition modes and those transition modes switching when you actually switch operational modes. This paragraph read to me by the examiner suggests to me that the examiner shared the same view that the patentee or applicant did, which is the mode switches when operational mode switches. And so I'm struggling to understand or to see where the examiner or the Board said that was not actually required by the patent, because the paragraphs I'm reading by the examiner suggest that he thinks Typhaine discloses that, not that it's not required by the claims. Right. If I may point you to the appeal brief at appendix 116 and 117 is where the argument starts. Actually, let's go appendix 117. That's the appeal brief. And it starts on page 117, but the meat of the argument is on page 118. It starts about a third of the way down the page. And they argue in the first described embodiment, in which the computer input device will use either a wired or a wireless connection. So they're arguing that this paragraph doesn't have the combination of both. The computer input device will not function to use a first command transmission device when they quote the claim language. And what they're saying in that paragraph is that paragraph 28 doesn't have the two transmission devices. And in the next paragraph they argue that paragraph 36 doesn't have the automatic switching of lifting up the device up from the table and putting it down. And that's pretty much the argument in the appeal brief. Generally that the two modes or the two embodiments that they call it are mutually exclusive. They didn't use those words, but that was the argument in the appeal brief. So the board wasn't really presented with the actual question of do the transmission devices automatically change when the thing is lifted off the table. Panel has no further questions. Okay. Thank you, Ms. Day. Mr. Lucas, you have some more bubble time. I mean, just briefly, I think the claim is very clear that the modes need to automatically transition. And then when that happens, the claims are very clear that it's configured to use the first in a certain mode. In the first mode, it's configured to use a first transmission device. And in a second mode, it's configured to use a second transmission device. There has to be some switching, right? And the switching is indicated in the wearing clause as occurring by virtue of moving from the first mode to the second mode. Agreed. I mean, I don't know how else that would occur. I'm trying to even mentally imagine how. No, I don't either. I mean, I think that's very clear. And that's what the patent discloses as well. Right. And that's just not disclosed in the second embodiment or the first embodiment. And so the argument that that was not presented, the claims speak for themselves and the arguments were made. Did the PTO argue waiver on appeal of this issue? I think strictly with respect to obviousness issues. So that was it. This also appears to be a new argument for the appellant. And we would suggest that it's waived, but I also don't think it has any legs because of the way the claims are written. I think that they're very clear that to fame does not anticipate the claims. Thank you, Mr. Lucas. Thank both counsel for their arguments. The case is taken under submission.